## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SEEMA MADHAVAN, on behalf of herself and all others similarly situated, | Case No. 1:22-cv-1350 |
| Plaintiff, | Judge Edmond E. Chang |
| v. | **ORAL ARGUMENT REQUESTED** |
| BLISTEX INC., | |
| Defendant. | |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT BLISTEX INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)</u>

**WOLF HALDENSTEIN ADLER  
 FREEMAN & HERZ LLC**  
Carl Malmstrom  
111 West Jackson Blvd., Suite 1700  
Chicago, IL 60604  
Tel: (312) 984-0000  
Fax: (212) 686-0114  
malmstrom@whafh.com  

**BURSOR & FISHER, P.A.**  
L. Timothy Fisher  
1990 North California Blvd., Suite 940  
Walnut Creek, CA 94596  
Telephone: 925-300-4455  
Facsimile: (212) 989-9163  
E-Mail: ltfisher@bursor.com  

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.      PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY THE FDCA .............................. 2

II.     PLAINTIFF STATES PLAUSIBLE CLAIMS FOR RELIEF ........................................... 5

     A.     Plaintiff Plausibly Alleges Purchase Of A Contaminated Odor Eaters Product........ 5

     B.     Plaintiff Plausibly States Her Warranty Claims........................................................ 8

           1.     Defendant Had Notice Of Plaintiff's Allegations ............................................. 8

           2.     Plaintiff Is Not Required To Allege Privity For Her Warranty Claims............ 9

           3.     Plaintiff Adequately Alleges Her Express Warranty Claim ......................... 11

           4.     Plaintiff Alleges That Her Product Was Unmerchantable ............................. 13

           5.     Plaintiff Has Properly Asserted A Claim Under The MMWA...................... 15

           6.     Plaintiff Alleges That She Has Been Damaged By Defendant's Breach Of Warranties ........................................................................................................ 15

     C.     Plaintiff Plausibly States A Claim For Unjust Enrichment ................................... 15

     D.     Plaintiff Plausibly States Her New York GBL Claims........................................... 16

           1.     Plaintiff Alleges Materially-Misleading Conduct Through Misrepresentations Made By Defendant Regarding The Nature Of The Products........................................................................................................... 17

           2.     Plaintiff Alleges Materially Misleading Conduct Through Omissions Made By Defendant Regarding The Nature Of The Products....................... 18

           3.     Plaintiff Has Adequately Alleged Injury ....................................................... 19

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*All-Tronics, Inc. v. Ampelectric Co.*,
  354 N.Y.S.2d 154 (N.Y. App. Div. 1974) .......................................................... 10

*Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*,
  858 N.Y.S.2d 405 (2008) ................................................................................. 9

*Atik v. Welch Foods, Inc.*,
  2016 WL 5678474 (E.D.N.Y. 2016) ................................................................ 12

*Barnet v. Drawbridge Special Opportunities Fund LP*,
  2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014) ................................................... 16

*Branca v. Bai Brands, LLC*,
  2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ................................................... 12

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) .................................................................................... 2, 3

*Choi v. Kimberly-Clark Worldwide, Inc.*,
  2019 WL 4894120 (C.D. Cal. Aug. 28, 2019) .................................................. 1

*Cirulli v. Hyundai Motor Co.*,
  2009 WL 5788762 (C.D. Cal. June 12, 2009) ................................................. 19

*Cooper v. Anheuser-Busch, LLC*,
  553 F. Supp. 3d 83 (S.D.N.Y. 2021) ............................................................... 17

*Daniel v. Mondelez Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ............................................................ 16

*Debernardis v. IQ Formulations, LLC*,
  942 F.3d 1076 (11th Cir. 2019) ................................................................. 6, 19

*Doll v. Ford Motor Co.*,
  814 F. Supp. 2d 526 (D. Md. 2011) ............................................................... 11

*Famular v. Whirlpool Corp.*,
  2017 WL 280821 (S.D.N.Y. Jan. 19, 2017) ...................................................... 9

*Goldberg v. Kollsman Instr. Corp.*,
  191 N.E.2d 81 (N.Y. 1963) ............................................................................ 10

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................... passim

*Gonzalez v. Pepsico, Inc.*,
  489 F. Supp. 2d 1233 (D. Kan. 2007) ..................................................... 6, 14

*Greene v. Gerber Prod. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ............................................................... 16

*Gremo v. Bayer Corp.*,
  469 F. Supp. 3d 240 (D.N.J. 2020) ................................................................. 13

*Haddix v. Gen. Mills, Inc.*,
  2016 WL 2901589 (E.D. Cal. May 17, 2016) ................................................... 8

*Harris v. Pfizer Inc.*,
  2022 WL 488410 (S.D.NY. Feb. 16, 2022) .................................................... 12

*Hubbard v. General Motors Corp.*,
  1996 WL 274018 (S.D.N.Y. 1996) ............................................................ 10, 11

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) ............................................................... 8

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
  2020 WL 7418006 (D.N.J. Dec. 18, 2020) ....................................................... 4

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
  2021 WL 222776 (D.N.J. Jan. 22, 2021) .................................................. passim

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
  2021 WL 4593961 (S.D. Fla. Oct. 6, 2021) ...................................................... 3

*Kaye v. Grossman*,
  202 F.3d 611 (2d Cir. 2000) ............................................................................ 15

*Kommer v. Ford Motor Co.*,
  2017 WL 3251598 (N.D.N.Y. July 28, 2017) ................................................. 19

*Leonard v. Abbott Laboratories, Inc.*,
  2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ................................................ 1, 16

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
  865 F. Supp. 2d 529, 543(D.N.J. 2011) ......................................................... 14

*Martin v. Ford Motor Co.*,
  765 F. Supp. 2d 673 (E.D. Pa. 2011) ............................................................... 8

*Morris v. Mott's LLP*,
2019 WL 948750 (C.D. Cal. Feb. 26, 2019)................................................ 12

*Muehlbauer v. Gen. Motors Corp.*,
431 F. Supp. 2d 847 (N.D. Ill. 2006) ....................................................... 8

*O'Neill v. Standard Homeopathic Co.*,
346 F. Supp. 3d 511 (S.D.N.Y. 2018)....................................................... 1

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)................................................................... 17

*Perez v. B. Braun Medical, Inc.*,
2018 WL 2316334 (S.D.N.Y. 2018)........................................................ 9

*Philips v. Ford Motor Co.*,
2016 WL 693283 (N.D. Cal. Feb. 22, 2016) ........................................... 1

*Randy Knitwear v. Am. Cyanamid Co.*,
181 N.E. 2d 399 (N.Y. 1962).................................................................. 10

*Riegel v. Medtronic, Inc.*,
552 U.S. 312 (2008)............................................................................... 3

*Slowinksi v. Forces of Nature, Inc.*,
2021 WL 1165099 (N.D. Ill. Mar. 26, 2021)........................................... 5

*Supernus Pharms., Inc. v. TWi Pharms., Inc.*,
265 F. Supp. 3d 490 (D.N.J. 2017) ......................................................... 7

*Tears v. Bos. Sci. Corp.*,
344 F. Supp. 3d 500 (S.D.N.Y. 2018)...................................................... 14

*Wade v. Tiffin Motorhomes, Inc.*,
686 F. Supp. 2d 174 (N.D.N.Y. 2009) ..................................................... 10, 11

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283 (S.D.N.Y. 2015)........................................................ 9

*Woods v. Maytag Co.*,
807 F. Supp. 2d 112 (E.D.N.Y. 2011) ...................................................... 19

*Wyeth v. Levine*,
555 U.S. 555 (2009)............................................................................... 4

## STATUTES

15 U.S.C. § 2301(6)(A)............................................................................ 15

21 U.S.C. § 379r ........................................................................................................... 5

21 U.S.C. § 379r(a) ...................................................................................................... 3

21 U.S.C. § 379s ........................................................................................................... 4

N.Y. Gen. Bus. Law § 349 ........................................................................... 16, 18, 19, 20

N.Y. Gen. Bus. Law § 350 ......................................................................................... 16

**RULES**

Fed. R. Civ. P. 8 ......................................................................................................... 19

Fed. R. Civ. P. 8(a) ..................................................................................................... 19

Fed. R. Civ. P. 8(d)(2) ................................................................................................ 16

Fed. R. Civ. P. 8(d)(3) ................................................................................................ 16

Fed. R. Civ. P. 9(b) ..................................................................................................... 19

**REGULATIONS**

21 C.F.R. § 210.1(a) ..................................................................................................... 7

21 C.F.R. § 211.110 ...................................................................................................... 7

**OTHER AUTHORITIES**

U.C.C. § 2-313 .............................................................................................................. 2

U.C.C. § 2-607 .............................................................................................................. 2

## INTRODUCTION

Defendant attempts to recast what is a straight-forward product recall class action as an "opportunistic" suit that purportedly aims to obtain the same result already provided by Defendant's refund. But the only thing accomplished by Defendant's recall of its foot spray products (the "Products") was the disclosure that the Products suffer from a horrific defect: they are contaminated with benzene, which can cause severe illness and death, and cannot be used for their only intended purpose – as foot sprays. *See* Complaint, Dkt. 1, at ¶¶ 1-23.[1] The recall was woefully deficient and calculated to protect Defendant's profits by ensuring as few returns as possible. Class members effectively received no real notice of either the refund or the recall.

Plaintiff is not seeking the "same" relief made available by the recall. Should she prevail, Plaintiff will be entitled to damages (including statutory damages), prejudgment interest, costs, and attorney's fees, and will provide an adequate notice program resulting in refunds actually being provided to class members. Indeed, class members that are no longer in possession of or threw out the Products (as instructed by the FDA and recall notice), are entitled to no relief under Defendant's recall but may properly seek relief here. District courts routinely find that class members can proceed with such claims in similar product recall cases.[2]

---

[1] References to the Complaint herein refer to the March 15, 2022, Class Action Complaint filed in the Northern District of Illinois, Dkt. 1.

[2] *See, e.g., O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 522-523 (S.D.N.Y. 2018) (denying motion to dismiss class action involving recalled homeopathic medicine); *Leonard v. Abbott Laboratories, Inc.*, 2012 WL 764199, at *1, 26 (E.D.N.Y. Mar. 5, 2012) (denying motion to dismiss class action involving contaminated recalled infant powder formula recall did not moot class claims); *Philips v. Ford Motor Co.*, 2016 WL 693283, at *7 (N.D. Cal. Feb. 22, 2016) (denying motion to dismiss class action involving recalled cars); *Choi v. Kimberly-Clark Worldwide, Inc.*, 2019 WL 4894120, at *12-13 (C.D. Cal. Aug. 28, 2019) (denying motion to dismiss class action involving recalled tampons).

Defendant also argues that Plaintiff's claims are preempted by the Food, Drug and Cosmetic Act (the "FDCA"). The FDCA, however, does not preempt state law claims that rely on "traditional state tort law" like Plaintiff asserts here. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001). Plaintiff expressly does not seek to enforce the FDCA. *See* Compl. ¶ 16. In fact, Plaintiff's claims are not inconsistent with the FDCA in any way.

Defendant's other arguments fare no better. Defendant contends that Plaintiff's GBL claims fail because she has not alleged an actionable misrepresentation or injury. MTD at 2. Such a contention is false and directly contradicted by the allegations contained in Plaintiff's Complaint. Compl. ¶¶ 12-14, 75, 78, 85, 89-90. Defendant argues that it did not receive adequate pre-suit notice with regards to Plaintiff's warranty claims and that the claims fail due to lack of privity. Not so. On March 8, 2022, Plaintiff served a pre-suit notice letter and demand for corrective action that complied in all respects with U.C.C. §§ 2-313 and 2-607. *See id.* ¶¶ 50, 61. Moreover, privity is not required where the manufacturer makes misrepresentations of the products' labels, or in cases of exceptionally dangerous products. Both exceptions apply here.

Plaintiff is seeking to hold Defendant accountable for selling millions of bottles of poison labeled as foot sprays, and then retaining virtually all revenues derived therefrom even when the benzene contamination was disclosed. This case is not about "opportunism." It is about obtaining rightfully owed relief to Defendant's consumers.

## **ARGUMENT**

## I. **PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY THE FDCA**

Defendant argues that "Plaintiff's claims are plainly preempted" under the FDCA. MTD at 5. That is wrong. As a threshold matter, Plaintiff expressly does not seek to enforce the FDCA. Compl. ¶ 16 ("Notably, Plaintiff does not bring claims under the FDCA and does not seek to enforce federal law in this lawsuit. Instead, Plaintiff brings state law causes of action that arise

regardless of the Products' classification under the FDCA. That the Products are in fact adulterated and misbranded simply underscores the unmerchantable nature of the Products."). Instead, Plaintiff brings state law causes of action that are independently actionable regardless of whether Defendant violated the provisions of the FDCA or not.

Defendant cites 21 U.S.C. § 379r(a), which preempts any state requirement "that is different from or in addition to, or that is otherwise not identical with" federal law. 21 U.S.C. § 379r(a). That is a form of express preemption. Importantly, "[a] statute that expressly pre-empts state requirements that are different from or in addition to federal requirements 'does not prevent a State from providing a damages remedy for claims premised on a violation of' a [FDA] regulation." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2021 WL 4593961, at *2 (S.D. Fla. Oct. 6, 2021) (quoting *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008)). As the Supreme Court has made clear, preemption only applies if a plaintiff "solely" seeks to enforce the FDCA directly, and if the claim or duty does not flow from a pre-existing state-law duty. *Buckman Co.*, 531 U.S. at 353. By contrast, when a state law claim relies on "traditional state tort law," the claim is not preempted. *Id.* at 353; *see also In re Zantac*, 2021 WL 4593961, at *8 ("It does not appear on the face of the pleading, and the Brands have not argued, that the existence of the FDCA or the FDA [. . .] is a necessary element of the implied-warranty claim, the unjust-enrichment claim, or any of the Plaintiffs' other legal claims under any state's law.").

Here, Plaintiff's claims flow from state law duties not inconsistent with federal law. Each of Plaintiff's claims rely on an independent state law basis that Defendant could have satisfied, but did not. *See, e.g.*, Compl. ¶¶ 40-101. Specifically, Defendant could have manufactured the Products free of benzene, which would have rendered the Products merchantable and fit for use, but failed to do so. Defendant's Products were therefore both adulterated and misbranded, and

illegal to sell. State law imposes identical requirements that the Products be merchantable and fit for use, and that the labeling of the Products not be deceptive or misleading. There is no incongruity between Defendant's federal and state law requirements. That both federal and state law might prohibit the sale of products contaminated with benzene simply means those state requirements parallel federal requirements.

The court in *In re Valsartan* confronted the exact same preemption issue in a near identical case and rejected similar arguments. There, the plaintiffs brought a putative class action seeking economic loss for an alleged carcinogenic contamination in valsartan and related medications, asserting similar claims. *See In re Valsartan*, *Losartan, & Irbesartan Prod. Liab. Litig.*, 2020 WL 7418006, at *7 (D.N.J. Dec. 18, 2020) ("The Mfrs contend in their MTD that the following claims—negligence *per se*, strict liability defective design, breach of express warranty, fraud misstatement and negligent misstatement and state consumer-protection laws— in the Master Complaints are improper attempts to enforce the FDCA through state law and are preempted because the FDCA gives no right of action for private litigants."). The court rejected the defendants' arguments, noting that "federal law does not preempt such state law and common law claims." *Id.* At *9; *see also Wyeth v. Levine*, 555 U.S. 555, 564 (2009) (FDCA did not impliedly preempt state law claims seeking to enforce parallel state law requirements).

Defendant has failed to identify any obligation in which the state law requirements are inconsistent with federal law, nor can it. As one court explained, "GBL § 349 does not add any new requirements because the FDCA seeks to prohibit misbranding." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 475 (S.D.N.Y. 2014). Further, looking to the legislative history of the statute, the *Goldemberg* court noted that "according to the congressional record explaining the text of 21 U.S.C. § 379s, 'advertising issues relating to ...

4

misleading or deceptive claims are outside the scope of preemption.'  H.R.Rep. No. 105–399, at

103H.R.Rep. No. 105–399, at 103 (1997), 1997 U.S.C.C.A.N. 2880, 2893 (Conf. Rep.)."  *Id.* at

475-76; *see also Slowinksi v. Forces of Nature, Inc.*, 2021 WL 1165099, at *3 (N.D. Ill. Mar. 26,

2021) (rejecting § 379r preemption as to OTC drug as federal law "prohibits misbranding of drugs,

which occurs if the drug's label is false or misleading in any particular . . . Plaintiff's state-law

claims would also require Defendant to refrain from falsely or misleadingly label their products. .

.[g]ranting Plaintiff relief would . . . not impose a state requirement different from or in addition

to, or that is otherwise not identical with" any federal law) (internal quotations omitted).  Because

granting Plaintiff relief in this matter would not impose requirements different from or in addition

to federal law, preemption is inapplicable.

## II.  PLAINTIFF STATES PLAUSIBLE CLAIMS FOR RELIEF

### A.  Plaintiff Plausibly Alleges Purchase Of A Contaminated Odor Eaters Product

Defendant argues that "Plaintiff never alleges she personally detected any level of benzene,

let alone a harmful level, in her purchased product. Plaintiff's claims are supported solely by

inference, assumption and conjecture."  MTD at 7.  That is wrong.  Plaintiff alleges that she

purchased one of the recalled lots of the Product, even identifying the specific lot number that she

purchased.  Compl. ¶ 24.  Defendant specifically stated that the Product she purchased was being

recalled due to the presence of benzene.  *Id.*  Defendant explicitly stated that "[i]nternal testing"

revealed the presence of benzene in the recalled Products, including the one purchased by

Plaintiff.[3]  Defendant recognized this rendered the recalled Products unsafe and unfit for use, and

instructed consumers to stop using the Products immediately: "Consumers, distributors, and

---

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/odor-eatersr-issues-voluntary-nationwide-recall-specific-lots-odor-eatersr-spray-powder-and-odor (last visited 5/19/22).

retailers that have product which is being recalled should stop using or selling these specific Odor-Eaters® spray products and dispose of them appropriately." *Id.* The question of the actual levels of benzene are a question of fact for discovery. Plaintiff need not produce evidentiary material to survive a motion to dismiss. That the Products were recalled for benzene renders her claims more than plausible at this stage. *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1237 (D. Kan. 2007) (denying motion to dismiss in near identical putative class action regarding benzene contamination in beverage products).

Plaintiff did not bargain for a Product that contained benzene and was subject to recall, she bargained for a Product that was safe and effective for its stated purpose. Because the Product was contaminated with benzene, a known carcinogen, it was adulterated, misbranded, illegal to sell and unfit for its intended use. *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021) ("This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold [medication] actually achieved the medical purpose [for which it is intended] . . . Further, contaminated drugs do create a present injury because their sale should never have occurred."); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019) ("A person who purchased an adulterated dietary supplement thus received a product that Congress judged insufficiently safe for human ingestion. Given Congress's judgment, we conclude that the purchaser of such a supplement received a defective product that had no value. This conclusion is consistent with the well-established benefit-of-the-bargain theory of contract damages, which recognizes that some defects so fundamentally affect the intended use of a product as to render it valueless."). As a practical matter, if the Products are not worthless or worth less

than what was paid for them, why would Defendant purportedly offer a refund for them? Defendant's own actions undermine its self-serving arguments.

Defendant persists that "Plaintiff provides no facts to suggest Blistex *has* violated the cGMPs; she merely makes an *ipse dixit* assertion they were violated." MTD at 8. That is incorrect. 21 C.F.R. § 210.1(a) states that the cGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess." Here, there is no question that the Products did not meet the "quality and purity characteristics that it purports or is represented to possess" because they were contaminated with carcinogenic benzene. Defendant admits this was because of a defect in a component of the Products, namely the aerosol propellant. MTD at 3. Defendant all but concedes cGMP violations because cGMPs require comprehensive testing of drug products and in-process materials. 21 C.F.R. § 211.110; *Supernus Pharms., Inc. v. TWi Pharms., Inc.*, 265 F. Supp. 3d 490, 503 (D.N.J. 2017) ("Pursuant to FDA regulation, all pharmaceutical formulations must pass a series of uniformity tests, including blend uniformity, content uniformity, and dissolution testing, prior to being administered to humans or animals. *See* 21 C.F.R. § 211.110. These controls are required to 'assure batch uniformity and integrity of drug products.'"). Had Defendant engaged in the type of testing required under cGMP regulations, it would have identified the presence of benzene in the propellant prior to selling the Products to Plaintiff and class members and having to recall the Products. *See* Compl. ¶¶ 12-13.

### B.    Plaintiff Plausibly States Her Warranty Claims
### 1.    <u>Defendant Had Notice Of Plaintiff's Allegations</u>

Defendant asserts an assortment of challenges to Plaintiff's warranty claims.  First, Defendant argues that Plaintiff has not provided adequate pre-suit notice.  MTD at 9-10. Defendant claims that pre-suit notice is important to protect its ability "to investigate, to correct a defect, and to encourage pre-suit settlement negotiations."  *Id.* at 9.  Defendant, however, ignores the demand letter sent by Plaintiff's counsel on January 25, 2022 and the complaint subsequently filed in the Southern District of New York raising these exact same issues.  Defendant received the initial demand letter on January 31 and took no action to correct the issues raised or to engage in any pre-suit negotiations.  In addition, on March 8, 2022, one week prior to the filing of this action, Plaintiff's counsel sent a second demand letter on behalf of Plaintiff Madhavan that was virtually identical to the January 31 letter.  *See* Compl. ¶¶ 50, 61, 101 and Exhibit A thereto.  In the nearly three months since that letter was sent, Defendant has again failed to take any curative action in response other than to file this motion to dismiss.  There is no legitimate argument that Defendant did not have actual notice of the allegations asserted in this case.

Courts have rejected similar arguments about notice when a defendant had actual knowledge of the problems with a product yet failed to provide effective warranty relief.  *See In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016) ("Plaintiffs have sufficiently alleged factual support for one of the exceptions to direct notice—actual knowledge of the defendant."); *see also Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 860 (N.D. Ill. 2006) (notice requirement satisfied where alleged defect was publicized and complaints were made to dealers).  Thus, "[b]ecause of the fact that Defendants were indisputably aware of the alleged breach prior to Plaintiff's filing . . . imposing [a] pre-suit notice requirement here would fail to serve its purpose."  *Haddix v. Gen. Mills, Inc.*, 2016 WL

2901589, at *9 (E.D. Cal. May 17, 2016); *see also Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 683 (E.D. Pa. 2011) (notice requirement met based on allegations that defendant knew of the problems). Here it is undisputed that Defendant was aware of the benzene contamination prior to the filing of the Complaint. Defendant recalled the products on November 17, 2021. Compl. ¶ 6. In its motion to dismiss, Defendant admits that it was on notice because of the recall and the prior complaint filed in the Southern District of New York. MTD at 1 ("On November 17, 2021, Blistex announced a voluntary recall and refund of certain Odor-Eaters foot spray lots due to benzene contamination" and "Plaintiff's counsel originally filed a materially identical case in the Southern District of New York on January 31, 2022."). Accordingly, because Defendant had actual notice of its warranty breaches before this lawsuit was filed, no additional pre-suit notice was required.

**2.** **Plaintiff Is Not Required To Allege Privity For Her Warranty Claims**

Next, Defendant contends that Plaintiff's warranty claims fail for lack of privity. Defendant is wrong. First, privity is not an element of a New York express warranty claim. *See Perez v. B. Braun Medical, Inc.*, 2018 WL 2316334, at *5, (S.D.N.Y. 2018) ("[A]n express warranty may be formed by advertisements and privity is not required to sustain a cause of action seeking to recover damages for breach of an express warranty.") (citation omitted). Consumers may assert a breach of express warranty claim against a manufacturer, even if they did not buy the product directly, where the manufacturer's own representation forms the basis of the bargain. *Goldemberg*, 8 F. Supp. 3d at 482 (an express warranty "may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies") (quoting *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 407 (2008)); *Famular v. Whirlpool Corp.*, 2017 WL 280821, at *10 (S.D.N.Y. Jan. 19, 2017) ("New York law does not require privity when a breach of express warranty is based on

9

misrepresentations contained in public advertising or sales literature."). Numerous other courts have reached the same conclusion. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015) ("a plaintiff need not be in privity with a defendant to bring [a claim for breach of express warranty] based on misrepresentations contained in "public advertising or sales literature."); *Randy Knitwear v. Am. Cyanamid Co.*, 181 N.E. 2d 399, 402 (N.Y. 1962) (no privity requirement where manufacturer made express representations to induce reliance by remote purchasers).

While New York law does not require privity for a claim for breach of express warranty, it does generally require privity for a claim of breach of implied warranty. Privity, however, is not required in cases involving inherently dangerous products like those at issue in this case. "New York recognizes an exception to [the privity] principle where the product in question is a thing of danger." *See Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 191 (N.D.N.Y. 2009); *see also Hubbard v. General Motors Corp.*, 1996 WL 274018, at *5 (S.D.N.Y. 1996) (same) (citing *Goldberg v. Kollsman Instr. Corp.*, 191 N.E.2d 81, 82 (N.Y. 1963)); *All-Tronics, Inc. v. Ampelectric Co.*, 354 N.Y.S.2d 154, 156 (N.Y. App. Div. 1974) ("a defect in a potentially hazardous product subjects the distributor-vendor and the manufacturer to liability to a purchaser for breach of implied warranties"). More specifically, "where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated." *Hubbard*, 1996 WL 274018, at *5.

Here, Plaintiff alleges that the Odor Eaters products at issue are contaminated with benzene, which is "a carcinogenic chemical impurity that has been linked to leukemia and other

cancers." Compl. ¶ 1. The Department of Health and Human Services has determined that benzene causes cancer in humans. *Id.* ¶ 3. Likewise, the FDA lists benzene as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." *Id.* California's Proposition 65 Fact Sheet for benzene states, "[b]enzene is on the Proposition 65 list because it can cause cancer and birth defects or other reproductive harm." The products at issue here are clearly "things of danger" that fall within the privity exception. *See, e.g.*, *Hubbard*, 1996 WL 274018, at *5 ("[A] vehicle equipped with a defective braking system is likely to be a source of danger when drive. Therefore, the Court finds that plaintiff may assert a claim for breach of implied warranty against GM, even though Hubbard is not in privity with GM."); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 541 (D. Md. 2011) (applying New York law, explaining that "where a defect in a product makes its use a likely source of danger to several or many people, the manufacturer, as well as the vendor, is liable for breach of implied warranties" and holding "Plaintiffs have pled sufficient facts to support a finding that the vehicles are dangerous, thereby triggering the privity of contract exception."); *Wade*, 686 F. Supp. 2d at 191 ("Therefore, although Defendant is correct in noting the lack of privity between itself and Plaintiff, that lack of privity is irrelevant under the circumstances" where plaintiff brought claims over "a defective propane gas system"). The Court should reject Defendant's privity arguments.

### 3. Plaintiff Adequately Alleges Her Express Warranty Claim

Defendant also argues that Plaintiff fails to "allege an actionable written warranty." MTD at 11-13. That argument is without merit. A New York breach of express warranty claim requires Plaintiff to allege: "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach

of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg*, 8 F. Supp. 3d at 482. Plaintiff sufficiently pleads all elements and Defendant only actually challenges the first. Specifically, Plaintiff alleges that the label's representation that the products contain only the active ingredients listed on the label is a warranty and satisfies the first element of the *Goldemberg* factors. *See* Compl. ¶ 55 ("Plaintiff relied on the express warranty that the Product would contain only the active ingredient stated on the label, and not harmful impurities such as benzene."). "Any description of the goods which is part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Atik v. Welch Foods, Inc.*, No. 15-5405, 2016 WL 5678474, at *39-40 (E.D.N.Y. 2016).

Defendant relies on *Harris v. Pfizer Inc.*, 2022 WL 488410 (S.D.NY. Feb. 16, 2022), but that case is distinguishable and inconsistent with the weight of authority. In *In re Valsartan, Losartan, and Irbesartan Liab. Litig.*, 2021 WL 222776, at *9-12 (D. N.J. Jan. 22, 2021), the court denied a challenge to an express warranty claim and held that selling a generic drug "when it contains a contaminant … constitutes a breach of express warranty." The court explained: "Put simply, a seller cannot call its product 'X' and sell it as 'X' and then expect such identification not to create an express warranty that the product is 'X'." *Id.* at *11; *see also Morris v. Mott's* LLP, 2019 WL 948750, at *5 (C.D. Cal. Feb. 26, 2019) (rejecting challenge to breach of express warranty claim where the defendant allegedly failed to indicate that fruit snacks included malic acid); *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at *10-11 (S.D. Cal. Mar. 7, 2019) (same).

Here, Defendant represented its Odor Eaters Products as anti-fungal medications that contained the active ingredients stated on the label. But in fact customers received something other than that, they received a Product that was contaminated with a carcinogenic impurity. The presence of this impurity caused the Products to be something other than what was approved by

the FDA. *See In re Valsartan*, 2021 WL 222776, at *11 ("The Mfrs' very naming of the drug as valsartan or valsartan-containing amounted to an express warranty on which plaintiffs had no choice but to 'rely' when they were prescribed the drug and bought it as a medication for their high blood pressure. Plaintiffs did not have to 'perceive' the package labelling or insert in order to create a benefit of the bargain. All they had to know was they were buying a generic drug that contained valsartan because the very name 'valsartan' or 'valsartan-containing' constituted itself an express warranty that what plaintiffs were purchasing was the chemical equivalent of the Orange Book pharmaceutical."); *see also Gremo v. Bayer Corp.*, 469 F. Supp. 3d 240, 258 (D.N.J. 2020) ("A statement can amount to a warranty, even if unintended to be such by the seller, if it could fairly be understood [] to constitute an affirmation or representation that the product possesses a certain quality or capacity relating to future performance.") (internal quotations omitted).

This Court should follow *In re Valsartan*. The Products were labeled as Odor Eaters products, which Plaintiff understood as "representations and warranties" by Defendant that the Products would be the equivalent to the FDA-approved version of the Products and would not contain "harmful impurities such as benzene." Compl. ¶ 42. Thus, Plaintiff bargained for the non-contaminated Products formulated in accordance with FDA-approved ingredients. *Id.* But the Products were not the equivalent of the FDA-approved version of the Products because they were contaminated with benzene. *Id.* Thus, Defendant breached an express warranty. *In re Valsartan*, 2021 WL 222776, at *11-12. The Court should reject Defendant's challenge to Plaintiff's express warranty claim.

       **4.**       **Plaintiff Alleges That Her Product Was Unmerchantable**

Defendant further argues that Plaintiff does not adequately allege that the Odor Eaters product that she purchased was unmerchantable. MTD at 13-14. That is incorrect. Plaintiff alleges that the Odor Eaters products were "defective in that they contained elevated levels of carcinogenic benzene above the legal limit, and as such are not generally recognized as safe for human consumption." In *Gonzalez v. Pepsico, Inc.*, 489 F.Supp.2d 1233, 1247 (D. Kan. 2007), the court rejected the same argument and held that the "question whether defendants' beverage products *probably* contained benzene or *possibly* contained benzene is one of degree which is not properly resolved on the motion to dismiss." (emphasis in the original). Unlike *Gonzalez*, there is no question in this case that Defendant's products contained benzene. In fact, Defendant recalled the products due to benzene contamination. Compl. ¶ 6 ("On November 17, 2021, Defendant, in conjunction with the FDA, announced a recall of 'forty-one lots of two Odor-Eaters spray products … due to the presence of benzene.'").

Indeed, a product contaminated with benzene that is subject to recall and cannot be sold is unfit for its intended purpose. *In re Valsartan*, 2021 WL 222776, at *16 ("[C]ontaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for."); *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 543 (D.N.J. 2011) ("[W]ith regard to a manufacturing defect, a breach of the warranty of merchantability may occur whether the goods contain one big manufacturing defect such as a faulty transmission, or a multitude of smaller defects that, in sum, render the goods virtually unusable[.]"); *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018) (explaining that a defectively manufactured product is unmerchantable). The Court should deny Defendant's motion to dismiss Plaintiff's claim for breach of implied warranty.

14

### 5. Plaintiff Has Properly Asserted A Claim Under The MMWA

Defendant contends that Plaintiff's claim under the MMWA fails because Plaintiff's state law warranty claims also fail. Defendant does not assert any new arguments challenging Plaintiff's MMWA claim and the Court should therefore deny Defendant's motion to dismiss.[4]

### 6. Plaintiff Alleges That She Has Been Damaged By Defendant's Breach Of Warranties

Finally, Defendant asserts that Plaintiff's "warranty claims fail because she has no damages resulting from the professed breach of express or implied warranty." MTD at 15. Specifically, Defendant claims that Plaintiff has not suffered any damages because Defendant announced a recall. That argument, however, concerns the amount of damages owed to Plaintiff and the putative class members or issues related to class certification. It is irrelevant for the purposes of a motion to dismiss, which merely tests whether Plaintiff has adequately alleged her causes of action. Plaintiff has clearly alleged that she and the other members of the class have been damaged. Compl. ¶¶ 49, 60, 100.

### C. Plaintiff Plausibly States A Claim For Unjust Enrichment

Defendant argues that unjust enrichment is an equitable remedy available only available when circumstances create an equitable obligation running from the defendant to the plaintiff. MTD at 16. That is wrong. The elements of unjust enrichment require a showing "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). The first and second elements are sufficiently pled because "Plaintiff and Class members conferred benefits on Defendant by purchasing the Products ... even though the Products cannot be used for their principal intended

---

[4] To be clear, Plaintiff's MMWA claim is based on her state law warranty claims. Plaintiff is not asserting a violation of 15 U.S.C. § 2301(6)(A).

purpose and are worthless due to the presence of benzene." Compl. ¶ 65. Plaintiff sufficiently pleaded the third element of her unjust enrichment claim because "Defendant knows the Products are defective and has issued a recall, but has not provided a refund to Plaintiff or members of the Classes." *Id.* ¶ 66.

Nevertheless, Defendant contends that Plaintiff's unjust enrichment claim should be dismissed because it is supposedly duplicative of other claims. Generally, "a claim for unjust enrichment may be pleaded in the alternative to other claims." *Barnet v. Drawbridge Special Opportunities Fund LP*, 2014 WL 4393320, at *22 (S.D.N.Y. Sept. 5, 2014) (citations omitted); *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

### D.  Plaintiff Plausibly States Her New York GBL Claims

GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. GBL Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350. "To assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017) (internal quotation omitted). "Claims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b)." *Daniel v. Mondelez Int'l,*

*Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018); *Greene*, 262 F. Supp. 3d at 67 (same). *See also Leonard*, 2012 WL 764199 at *19 (finding a "categorical rule that [GBL 349 and 350] claims, regardless of whether they 'sound in fraud', or are premised on specific misrepresentations rather than an 'advertising scheme', are not subject to the heightened pleading requirement of Rule 9(b)"). Additionally, claims under GBL typically involve questions of fact that are not suitable for resolution at the motion to dismiss stage. *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 96 (S.D.N.Y. 2021).

Defendant posits numerous challenges to Plaintiff's GBL claims, including that 1) Plaintiff failed to allege any actionable misrepresentation or deception; 2) Plaintiff failed to allege a knowing omission; and 3) Plaintiff has not suffered any injury. All of Defendant's arguments are without merit.

### 1. Plaintiff Alleges Materially-Misleading Conduct Through Misrepresentations Made By Defendant Regarding The Nature Of The Products

Defendant asserts that "Plaintiff's GBL claims fail because she does not allege the existence of any misleading or otherwise deceptive statement." MTD at 17. That is wrong.

Defendant incorrectly states the requirements for a GBL claim primarily based on misrepresentations. "The New York Court of Appeals has established an objective standard for determining whether acts or practices are materially deceptive or misleading 'to a reasonable consumer acting reasonably under the circumstances.'" *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (citation omitted). Specifically, the challenged act "must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

In *Pepe v. 4e Brand North America, LLC*, 7:20-cv-06494 (S.D.N.Y.), the court considered a near identical case wherein the plaintiffs alleged hand sanitizer products were "contaminated

with methanol, or that the 'active ingredient' is in fact to a large extent methanol, not Ethyl Alcohol – or 'ethanol.'" Transcript at 5:8-14. The plaintiffs brought GBL Section 349 and 350 claims based on misrepresentations on the products' labels, specifically: "Regarding their misrepresentation-based theory, Plaintiffs allege Defendant misrepresented that the hand sanitizers contained any -- only ethyl alcohol as an active ingredient and that the products were intended to be used as hand sanitizers." Transcript at 30:18-22. The court found such allegations sufficient to state a GBL Section 349 and 350 claim based on a misrepresentation concluding that "Plaintiffs' claims for violations of GBL Sections 349 and 350 may proceed." Transcript at 34:1-2.

Here, Plaintiff brings claims under New York's GBL Sections 349 and 350 related to her purchase of a foot spray product contaminated with benzene. Just as in *Pepe*, Defendant misrepresented the Products at issue by failing to indicate to consumers, including Plaintiff, that such Products contained benzene. Such a misrepresentation is materially misleading, as Plaintiff would not have purchased the Products had the misrepresentation not been made. *See* Compl. ¶¶ 64, 74. As such, Plaintiff has properly pled her claim under GBL Sections 349 and 350.

### 2. Plaintiff Alleges Materially Misleading Conduct Through Omissions Made By Defendant Regarding The Nature Of The Products

Defendant asserts that Plaintiff's GBL claims fail because she does not allege that Defendant had knowledge of the benzene contamination. MTD at 20. That is wrong.

First, Defendant mischaracterizes the nature of Plaintiff's GBL claims, as they primarily arise out of material misrepresentations. As stated above, Defendant misrepresented the Products at issue by failing to indicate to consumers, including Plaintiff, that they contained the carcinogen, benzene. Such conduct amounts to a materially misrepresentation, which does not require knowledge as an element. *See Goldemberg*, 8 F. Supp. 3d at 478 (primary inquiry is "whether

18

[the] acts or practices are materially deceptive or misleading to a reasonable consumer acting reasonably under the circumstances.") (internal quotations omitted).

Second, "[a] failure to disclose—an omission—may form the basis of section 349 and 350 claims." *See Kommer v. Ford Motor Co.*, 2017 WL 3251598, at *4 (N.D.N.Y. July 28, 2017). "[W]hen an allegation rests on a claim of fraudulent omission, the…standard is relaxed because a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (internal quotations omitted).

Here, Plaintiff had no reasonable means of discovering that the Products contained the carcinogen, benzene. Such information could only reasonably be obtained by Defendant. Defendant cannot claim ignorance from a contamination of its Products as a result of its own poor manufacturing standards. *See* Compl. ¶¶ 12-13. Such allegations are sufficient under the relaxed pleading requirement of Rule 8. *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 128 (E.D.N.Y. 2011) ("An action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a).") (internal quotations omitted). As such, Plaintiff has properly alleged a materially misleading omission under New York's GBL Sections 349 and 350.

### 3.    Plaintiff Has Adequately Alleged Injury

Defendant claims that Plaintiff has not alleged an injury sufficient to support her GBL claims. MTD at 21. That is wrong.

First, Defendant's argument that Plaintiff cannot claim injury for purchasing a product that she would not have purchased absent Defendant's deception is false, as numerous courts have found injury under a plaintiff's GBL claims where they purchased a product that was inherently worthless as a result of Defendant's deceptive acts and practices. *See Debernardis v. IQ*

*Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019); *see also In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 222776, at \*16 (D.N.J. Jan. 22, 2021) ("This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure. Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for.").

Second, Defendant's argument that Plaintiff has not alleged facts sufficient to support her claim that she paid a price premium for the Product misses the mark as well. Even the authority relied on by Defendant does not support this proposition, as the court in *Goldemberg* rejected the defendant's attempt at placing a heightened pleading requirement on the injury element of the plaintiff's GBL claims. 8 F.Supp.3d at 481 (finding "no such heightened standard applies to GBL § 349 claims."). As Defendant concedes, Plaintiff has alleged that she paid a price premium for the Products because of Defendant's misrepresentations that the Products did not contain the dangerous carcinogen, benzene. Compl. ¶¶ 78, 89-90. At this stage, no other allegations are required. Therefore, Defendant's Motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion to dismiss be denied.

Dated: June 6, 2022             Respectfully submitted,

                          **WOLF HALDENSTEIN ADLER**
                           **FREEMAN & HERZ LLC**

                          */s/ Carl V. Malmstrom*
                          Carl V. Malmstrom
                          111 West Jackson Blvd., Suite 1700
                          Chicago, IL 60604

Tel: (312) 984-0000
Fax: (212) 686-0114

**BURSOR & FISHER, P.A.**
L. Timothy Fisher
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: 925-300-4455
Facsimile: (212) 989-9163
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*